Good morning, Your Honors. I would reserve five minutes of rebuttal time in this case, and I'll keep an eye on the clock. My name is Phillip Pillsbury. I represent Pacific Coast Builders, the appellant in this case. May it please the Court and Counsel. This case involves a policy provision that says, in essence, this policy will cover the for the loss, in which case our policy will be excess to any such other insurance actually providing coverage. The policy is quite specific. We're talking about the AIU policy, an excess policy, second layer excess, issued by the respondent. The policy is quite specific. It requires that AIU can only avoid coverage if there was another policy, either scheduled or unscheduled, that was providing coverage, those are the words, quote, providing coverage, close quote, for the losses at issue. Here, it is undisputed that when AIU rejected Pacific's claim, there was no other, quote, insurance, close quote, quote, providing coverage, close quote, for these losses. So AIU was required to defend and indemnify these claims. The Court will recall that there are some 80 claims over 17 years. Each of the years has first layer excess, second layer excess, third and fourth layers of excess, going up to an average of $80 million or $77 million per year, all of which Pacific Coast Builders purchased. The Court will recall also that Pacific Coast Builders is in the construction business. It builds and installs products. And so it, not infrequently, is sued by plaintiffs who claim construction defects. We're familiar with the facts of the case. And being your short time, I think there's two cases that at least I'd like to hear you address, and that's Community Redevelopment and Padilla. And those have been cited in all your briefs. And I'd like to know from you what your position is with regard to the authority on those cases and how they fit your position. Yes. Thank you, Your Honor. Community Redevelopment and Padilla concern themselves with a retained limits clause. The language in the retained limits clause in each of those policies is very different than ours. Ours is the most specific type of retained limit clause you can have. It says the excess policy will pay when the underlying schedule policy exhausts and when all other insurance providing coverage exhausts. That's what our policy, AIU, says. Padilla doesn't say that. Padilla uses the word other coverage available to the insured. And Community Redevelopment uses the clause other insurance collectible by the insured. Ours is the most specific type. It actually requires that there be actual coverage provided at the time you make the claim. So we make the claim to AIU. AIU says we're not going to pay because there are other policies that are triggered. And you need to go talk to the other policies. In many instances, those were sister companies, National Union being one of them. We went to those companies, and in every instance they said, we don't have a present obligation to cover you. We will not provide you coverage now. Isn't that a — that's a strange way. Is that the — what were is your derivative of the definition, coverage? In other words, if they have no coverage, coverage comes, goes. Doesn't coverage mean what the policy is written and what liabilities or risks are covered under the policy? And that may not be triggered, but coverage is the scope of the policy, isn't it? Well, what the Supreme Court in California says is where you have damage in a continuous and progressive loss period, then all of the policies on the risk are triggered. But the Supreme Court says, we want to be clear, that does not mean that they're providing coverage. They are potentially applicable. But they do not provide coverage until all the terms and conditions of those policies have been met. When I look at the AIU policy, it says we can only avoid paying if there's a policy providing coverage, not a policy that's triggered, not a policy that may someday be available, not one that may be collectible because it's not insolvent, providing coverage. And the Community Redevelopment Court says when applying the horizontal exhaustion rule, you look at the language of the policy itself. And if it is clear and distinct, you don't apply the horizontal exhaustion rule. I may be wrong on this. I don't remember a case that we've read here that talks about triggered being interpreted exactly that way. Or am I missing something? The California Supreme Court says exactly that. And this is, and it might be worth a minute just to read that language. I have it here before me. This is what they said in Montrose. In the case of successive policies, bodily injury and property damage that is continuously and progressively deteriorating throughout several policy periods is potentially covered by all policies in effect during those periods. Stated in the insurance industry's parlance, we conclude the, quote, continuous injury, close quote, trigger of coverage should be adopted for third-party liability insurance cases involving continuously or progressively deteriorating losses. The term trigger of coverage should not be misunderstood as a doctrine to be automatically invoked by a court to conclusively establish coverage in certain categories of cases or under certain types of policies. The word trigger is not found in the CGL policies themselves, nor does the insurance code enumerate or define trigger of coverage. Instead, trigger of coverage is a term of convenience used to describe that which under the specific terms of an insurance policy must happen in the policy period in order for the potential of coverage to arise. The issue is largely one of timing. What must take place within the policy's effective dates were the potential of coverage to be triggered? Whether coverage is ultimately established in any given case may depend on the consideration of many additional factors, including the existence of express conditions or exclusions in the particular contract of insurance under scrutiny, the availability of certain defenses that might defeat coverage, and a determination of whether the facts of the case will support a finding of coverage. The point that we draw here is the exact error that the district court made. Judge Hamilton confused trigger of coverage with actually providing coverage. She drew no distinction. The California Supreme Court draws a specific distinction, and the policy issued by AIU says the underlying policies must be insurance providing coverage. Here, they weren't. Now, how were all these claims being handled? The answer is they were being handled by Pacific Coast Builders on its own, through its uninsured pocket, through its self-insured retention. That is not insurance. The California Supreme Court in Aerojet and in Dart Industries has been very clear. You could have gotten a policy that didn't have a retained insurance clause. I'm sorry, Your Honor? Excuse me. You could have gotten a policy, an initial policy, a prime policy, that didn't have this provision. Yes, we could have. We could have bought a primary policy. There were no primary policies here at all. It's not unusual in the construction industry to have very large SIRs. Ours were about $2.4 million on average in those years. That is not considered insurance. So the program we have is we have a layer of self-insured retention. Then you have first layer excess. Then you have second layer, third layer, fourth layer. And the courts are very clear that we're entitled to exhaust. We can select a period of time to exhaust an SIR and then go directly up that tower. That's what the FMC case holds. What we can't do in a continuous and progressive loss is to stack all of those coverages. We can't go up and stack horizontally. That's why you go vertically. And it's a fair rule. The reason it's fair, according to the Supreme Court, is once we go up vertically, those carriers that are triggered can then allocate with other policies that they believe have been triggered and have some responsibility. And so there's an element of fairness. That's what the allocation rule of community redevelopment was intended to do. But Judge Hamilton applied it here in a case where it was an action by an insurance company against an insured. This was tried, by the way, in the California Pacific Homes v. Scottsdale case, where the insurance companies in that case said, look, we are first layer excess policies. The SIRs are acting as primary policies. Therefore, you have to exhaust those primary policies before you can trigger our coverage. Court said, no, you can't. It's a 1999 case, and we've cited it. The court said, no, that's not insurance. Those are self-insured retentions. And the allocation rule doesn't apply by an insurer to be shut out of coverage by using this allocation rule. The allocation rule is solely to be used by and between insurers determining the priority of their payment of the loss. So to wrap up this, because I'm coming down to five minutes that I'd like to hold back for rebuttal, community redevelopment and BDEA have different language. It's much broader than our language. Ours is very specific. In both of those cases, there were insurers that were actually providing coverage. In our case, there was no insurer actually providing coverage, and that's undisputed. Thank you. I'll retain the rest of my time for rebuttal. Good morning, Your Honors. Rosemary Springer on behalf of Appellee AIU Insurance Company. Pacific Coast has insisted in its briefs in the trial court and here on appeal that this case must be resolved by focusing on the contract language of the AIU policy. AIU agrees. Excuse me. Could you keep your voice up just a little bit? Sorry. AIU agrees that the focus should be on the contract language of its policy. The problem with Pacific's argument is that contract language has already been interpreted by the California Court of Appeals in community redevelopment and is found to be unambiguous. The distinction, the key in community redevelopment is when you're looking at an excess policy, you have to determine whether that policy is excess. It expressly states that it's excess just to a scheduled underlying policy or some specifically described policy, or is it excess to a broader range of underlying insurance, both scheduled and unscheduled. That's the analysis in community redevelopment. It wasn't looking at providing or collectible. It was looking at is it just scheduled underlying insurance or is it scheduled underlying insurance and all other underlying insurance. We have that language, exact language. The trial court here found the language virtually identical to the language in community redevelopment. What that means is this is a policy for which horizontal exhaustion applies. Pacific Coast tries to avoid horizontal exhaustion by looking to the providing coverage term, saying that that's materially different and that that should change the result. They say that the underlying primary policies are not providing coverage because they have unexhausted SIRs. The problem with that argument is the term providing coverage has been interpreted by the California Court of Appeals in the Wells Fargo case cited in our brief. In that case, the court looked not to specifics about the policy involved, but to the term providing coverage in the insurance context. It found it defined in the dictionary as included within the scope. Pacific agrees that all the triggered primary policies here, the coverage, it's within the scope of coverage here. There's no debate on that. They say they're not actually covering at this moment because they have unexhausted SIRs, but that's not what providing coverage means under California law. And the Wells Fargo decision was also the holding in Wells Fargo was reiterated in the Thai Court title case, which is also cited in our brief. And again, the court looked to the dictionary definition of coverage in the insurance context, providing coverage, and found coverage to mean included within the scope. I note that counsel in discussing community redevelopment brought in on the coverage issue the Montrose case. However, my reading of community redevelopment, they actually discussed Montrose. So Montrose is sort of subsumed, if you will, as far as that coverage issue, I think. Community redevelopment was looking at the precise problem or issue created by Montrose. When you have a Montrose case, you're going to have lots of triggered primary policies. So you're going to get to this question of the excess. Maybe they do as Pacific did here. You exhaust your primary, and then you look to the excess. And then you have to look to the excess language and say, are they excess only to the one policy underneath them? Or are they excess to all these triggered policies? You're not going to have all these triggered policies in your standard one occurrence in one year case. But in a Montrose case, we have lots of triggered primary policies. That's where this comes up. So to look to Montrose and say that somehow should change or distinguish community redevelopment makes no sense. Do you agree that PDEA and community redevelopment really are the underpinnings of your position? Yes. After we get past the providing coverage issue, the final attempt to avoid horizontal exhaustion here is looking at the SIRs and saying that the existence of an SIR somehow should create an excess. There's an exception, because they have unexhausted SIRs, so SIRs are not insurance. And somehow that means there's not underlying insurance. But that question was answered in PDEA. PDEA specifically rejected that argument. It rejected it as a matter of contract interpretation. But more importantly for this case, it rejected it as being completely unreasonable. And if you look at this case and you see how this argument would play out, you have an insurer that purchased the more expensive primary insurance and the less expensive excess insurance, which isn't supposed to have a duty until all the primary is gone. And they say, well, we have all this more expensive primary insurance, we'd rather not use. We want to look to the less expensive excess carrier who did not undertake this risk to drop down and cover our SIRs, basically, and cover all the defense and indemnity obligations of the primary. When the primary insurers don't have to pay a dime. That's unreasonable. And the court in PDEA found that unreasonable. And I think if you play out Pacific Coast's argument to the extreme, you could have an insurer that did not have SIRs, just had first dollar primary coverage that Pacific, I think, would concede requires horizontal exhaustion. And what if the insured didn't tender and said, well, these primary policies aren't actually providing coverage, because they have no duty to actually cover until we tender, and we didn't tender. We're tendering to you. And your policy says you're excess to policies that are providing coverage. These primary policies are not. If Pacific Coast's case said there was no providing coverage, why isn't our case the same? It completely turns the concept of less expensive excess coverage on its head, and you have the excess carriers dropping down and defending where the first line of defense is traditionally the primary carriers. So the trial court reached this result without even the benefit of PDEA. We ask this court, with the benefit of PDEA, to affirm the trial court's decision. If the court has no further questions. Thank you. What is the specific language that you're relying on? Identify that. The retained limits clause says in the AIU policy Where? It's at, let me show you in perhaps Judge Hamilton's order, the fastest way to identify it. To select that, yes, at the slip opinion at page 4. This is the district court's opinion. You don't have the ER page for that? Page 4 of the typed version is one that's exactly right. I'm sorry, I don't. Got it. Okay. Yes. That's the one that says AIU will be liable only for that portion of damages in excess of the insured's retained limit, which is defined as the greater of either the total of the applicable limits of the underlying policies, those are all long gone, listed in the schedule of underlying insurance, and the applicable limits of any other underlying insurance providing coverage to the insured. In comparison, if you look at the language in community redevelopment, that same retained limits clause is not identical. And it shouldn't be construed the same way. Community redevelopment says, companies shall be liable only for the ultimate net loss in excess of the greater of the insured's underlying limit, an amount equal to the limits of liability indicated beside the underlying insurance listed in the schedule of underlying insurance, plus the applicable limits of any other underlying insurance collectible by the insured. And Padilla uses the word available to the insured. Every retained limits clause is structured differently. If you look at the Nabisco case, which we've cited. Between those two. The difference is very, very plain to me. I think collectible simply means the companies are solvent, and that ultimately they'll be collectible. Available means that at some point in time you have available insurance. Over 17 years, from 1989 to 2000, the insurance companies are available to us. In 2006, we have first-layer excess, second-layer excess, third-layer excess. They are available to us when their terms and conditions are met. You want to go into the solvability or the solvency of the insurance companies in this analysis? No, I don't. But that's what you're saying, that that's what the terms require them to do. When you buy a policy, then you don't know whether you have coverage unless you determine the solvency of the insurance company. That's what happened in the Wells Fargo case. Wells Fargo had an insolvent company that was actually had a current obligation to provide coverage. It didn't do it because it was insolvent. So what the retained limits clause is looking at is... That's a whole different world. When a company goes insolvent, then you go down that route on whether the insurance commissioner picks it up and all that. That has nothing to do with the underlying legal responsibility in determining horizontal exhaustion. This is the difference. The difference is when you say providing coverage, there must be a current obligation to defend and pay claims. When you say available... Isn't that the ultimate question? You're saying you're looking to the ultimate question to solve the primary question. In other words, whether you really have to pony up depends on whether there's horizontal exhaustion. No. No, I don't think so at all. Forgive me for saying that. I think this is a very specific retained limits clause. And don't forget, community redevelopment says when it is that specific, it may be that the horizontal exhaustion rule doesn't apply. We don't... I'm right back to the specific clause. I still don't understand the difference between the clause in, I guess it's community redevelopment and the clause here. I can hear what you say with regard to collectible. Solvency may be an issue if you have an insolvent company. But collectible still suggests you can reach out and get the money. And in community redevelopment, they had the same problem. They couldn't reach out and get the money, by your theory, because the retained limits still sat there. No, I'm saying it slightly differently. Each of these primary carriers say we may have a duty to defend and indemnify, but we don't until the SIR is exhausted. So we have no current obligation to defend or indemnify. The retained limits clause says we are excess of any company providing coverage. That's an active verb. That's a verb that says there has to be coverage provided right now. There has to be a present obligation. Now, there are retained limits clauses that say if there's any unexhausted SIR, we won't pay until the SIR is exhausted. And Nabisco is an example of that. We don't have that here. There are clauses that say if insurance is available, we don't have to pay until you've exhausted available insurance.  We don't have to pay until you've exhausted available insurance. Well, there's the California case Hellman, which is a Cal App case that says collectible is used in other insurance clause means coverage available to the insured. I don't understand how a reasonable insured can get coverage. I mean, we can go through all of this, but it sounds like we're trying to distinguish words like collectible, available, as turning your phrase different than the others. And I'm thinking here that, as we've discussed, I don't understand why that makes us so much different in the clause. I just don't. Because when we asked our primary carrier, the first-rate Lexus carriers, to defend us, they said we have no current obligation to do that.  And on community redevelopment, the same thing happened. They go to the company and say, we want to collect money, but no, they couldn't collect money because they had the self-insured retention. Oh, no. Community redevelopment is different because the insured had already been taken care of. That case had already been settled. That was solely between insurance companies trying to determine priority of allocation. That was solely what that case is about. And in Padilla, Padilla, the insured had been taken care of. So these cases have to do with allocation rules between insurance companies. But if you look at it, what's a reasonable expectation of the insured? Is it a reasonable interpretation that providing coverage means that a company has to actually be providing coverage? And when the first-layer excess says we're not providing coverage to you because we have no obligation, isn't that a reasonable way for us to interpret that AIU then has an obligation to defend us and indemnify us? And if that's so, if it's reasonable, then this should be construed in favor of coverage. The problem with it is that Judge Hamilton made two errors. One is she made an error in confusing trigger with actual coverage. And the second one is she used a horizontal exhaustion rule that is intended to allocate coverage between excess carriers and primary carriers. There are no primary carriers here. Last point. Wait a minute. There are no primary carriers here. There are no primary carriers in this case. How do you get at that? Because the SIR is not insurance, and Ninth Circuit and California Supreme Court cases have said when you have that circumstance, there is no primary insurance. You start with a first-layer excess and you go up from there. There is no primary insurance in this case. California Pacific Coast says that. I mean, that's a Padilla case, flat out. Well, because Padilla isn't overwhelmed by Aerojet. Aerojet says that, which is a California Supreme Court case, says that it's not insurance. Domino's Pizza, the Ninth Circuit says when you have an excess with a large SIR, then there is no primary coverage. And, in fact, in Padilla, although it was a claim between two carriers, the insured had a very small SIR, a $25,000 SIR, not $2.4 million as we have in this case. So there was no primary insurance in this case. I'm kind of puzzled as to how, when you're getting insurance for all these things, you have all these primaries covering the same period in which there are SIRs. Now, how would you expect to collect on those? Well, what you do is, for a period in which you have a single occurrence, you pay through your SIR and then you go directly up to your first-layer excess, second-layer, third, fourth and fifth, all of which you paid for. That's the way the system is supposed to work. That's what the Supreme Court says. That's what FMC says. That's how it's supposed to work. And then those excess carriers have the right to seek recovery in equitable contribution or equitable subrogation against other policies that have been triggered. But what they can't do is require Pacific Coast or a company like Pacific Coast to exhaust its SIRs in every year in order to get any coverage. How could the excess carrier then seek contribution from the others, other policies that have the provision in there that there's an SIR? Because it happens all the time. There's case law that's done before us right now, but the case law is that the excess carriers then can seek equitable contribution or equitable indemnity against other carriers without regard to whether or not there is an SIR beneath them. That happens over and over, and that's how the equitable aspect of allocation works. That's why FMC says you can't take money in this first excess year and this one and this one and this one and stack them. You have to select a single period, and you're entitled to all the coverage within that period going up in a construction defect case. Once that happens, you can then select the excess carriers that pay that, then have an equitable right to allocation against other horizontally triggered carriers. That's the only way that you avoid stacking and the only fair way to resolve an issue like this. This is an insurance. This is a company that spent millions over 17 years and is now frozen out of coverage because of misallocation and misapplication of an allocation rule. That's what's going on in this case. I'm well over my time. Thank you for your time. So we appreciate the guidance from both counsel. If there are no further questions, then the case I just argued is submitted, and we'll move to the next case on the calendar, Olson v. United States. Thank you very much.
judges: Hug, Brunetti, Clifton